**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

John Powell and Devette Evans,

        Plaintiffs,                      Civ. No. 09-3137 (SRN/SER)
                                          **MEMORANDUM OPINION
                                          AND ORDER**

v.

Officer Bruce Johnson and the City
of Minneapolis,

        Defendants.

---

Richard W. Hechter, Thill Law Firm, P.A., St. Louis Park, Minnesota, for Plaintiffs.

Amanda M. Trelstad, Tracey N. Fussy, Susan L. Segal, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendants.

---

**INTRODUCTION**

On November 8, 2007, Minneapolis police officer Bruce Johnson shot and killed "Blu," a pit bull owned by Plaintiffs John Powell and Devette Evans. Plaintiffs later commenced the instant action, asserting *inter alia* that (1) by shooting Blu, Johnson effected an unlawful seizure in violation of the United States Constitution and (2) Defendant City of Minneapolis is liable for Blu's death because it failed to adequately train Johnson. Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion will be granted in part.

**BACKGROUND**

As required at this juncture, the pertinent facts are recited below in the light most favorable to Plaintiffs.  E.g., Rau v. Roberts, 640 F.3d 324, 327 (8th Cir. 2011).  The Court notes, however, that most of the facts are undisputed.

Plaintiffs (who live together at a home on Humboldt Avenue in Minneapolis) took possession of Blu in 2006, when it was a puppy.  (See Hechter Aff. Ex. 2.)  Jarell Evans, Plaintiff Devette Evans's son, testified in his deposition that Blu simply followed him home one day.  (J. Evans Dep. at 23.)[1]  Although Jarell believed his mother would not approve of a pit bull as a pet, Devette decided to keep it because she "lived in North Minneapolis, and at the time it was a very, very bad place to live, so that dog was pretty much my comfort."  (J. Evans Dep. at 23-24; D. Evans Dep. at 19.)  She testified in her deposition that Blu was "very protective" of her and "did everything" with the family.  (D. Evans Dep. at 19.)

On November 8, 2007, Johnson was on patrol in Minneapolis with his partner, Troy Walker.  (Johnson Dep. at 18.)  At approximately 4:30 that afternoon, they received a radio report that a person involved in a shooting had been seen running eastbound on 44th Avenue toward Humboldt Avenue.  (Id. at 18-19.)  Johnson and Walker traveled to the area to search for the suspect.  They parked their car and began walking down an alley between Humboldt and Irving Avenues, eventually reaching the back of Plaintiffs' home.  (Id. at 19.)  Johnson observed that the garage door and the garage's service door,

---

[1] To avoid confusion, the Court refers to Devette Evans and Jarell Evans by their first names.

which led into the home's backyard, were both open. (Id. at 19-20.) Thinking this was unusual, he entered the garage to investigate. (Id.)[2] After searching for approximately ten seconds and finding nothing, he walked through the service door into the backyard. (Id. at 20-22; J. Evans Dep. at 15-16.)[3] There, Blu saw him and began walking toward him. (J. Evans Dep. at 16.) Johnson then turned around and walked back through the service door, headed toward the alley through the garage. (Id.) There is no evidence in the record indicating that Johnson saw Blu in the backyard.

Jarell, who was then standing behind Blu, began calling the dog to come to him, but it did not respond. (Id.) Instead, it began "jogging" toward Johnson. (Id.)[4] As Johnson proceeded toward the alley, he heard "a gnawing kind of sound" behind him, "like . . . nails hitting . . . concrete." (Johnson Dep. at 20, 23.) He turned around and saw Blu, which he described as a "large pit bull coming . . . at [him], mouth open, teeth glaring, and . . . look[ing] extremely aggressive, making a straight beeline forward." (Id. at 20.)[5] The dog "was running [at] what appeared to be full speed towards" Johnson and

---

[2] Without citing any evidence, Plaintiffs "dispute" that the garage door was open. (Mem. in Opp'n at 3.) Yet, they acknowledge that Johnson entered the garage (see id.), and they offer no explanation how he could have done so with the garage door closed.

[3] In his deposition, Johnson testified that after searching the garage, he turned around and walked back toward the alley. (Johnson Dep. at 20-22.) For purposes of the instant Motion, the Court accepts Jarell's testimony that Johnson entered the backyard. Ultimately, this fact dispute does not alter the Court's inquiry.

[4] There is some dispute whether Blu was barking at that time (compare J. Evans Dep. at 17 with Pl. Interrogatory Response No. 4), but that dispute is irrelevant to the Court's analysis.

[5] Powell estimated that, on the day in question, Blu weighed 68 pounds and stood approximately 2-1/2 feet high (Powell Dep. at 26), while Jarell estimated the dog weighed 110 pounds and stood approximately 3 feet high (J. Evans Dep. at 22).

was no more than 10 feet away from the officer when he turned.  (Id. at 24, 30.)  Johnson grabbed his service revolver and fired a single shot, hitting the dog in the head and immediately killing it.

On November 6, 2009, Plaintiffs commenced the instant action.  They later filed an Amended Complaint asserting the following claims:  violation of the Fourth and Fourteenth Amendments by shooting and killing Blu (Count I); violation of Plaintiffs' constitutional rights due to the City's failure to adequately hire, train, and supervise Johnson (Count II); intentional infliction of emotional distress (Count III); negligent hiring, supervision, and retention of Johnson (Count IV); vicarious liability (Count V); and trespass and conversion (Count VI).  With discovery complete, Defendants now move for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible

evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

At the outset, the Court notes that the precise contours of Plaintiffs' constitutional claims are somewhat unclear. In Count I of the Amended Complaint, Plaintiffs invoke the Fourth and Fourteenth Amendments, and it might be possible to assert claims under both for Blu's shooting: unreasonable seizure under the former, and the taking of property without due process of law under the latter. See, e.g., Schor v. N. Braddock Borough, 801 F. Supp. 2d 369 (W.D. Pa. 2011) (analyzing claims arising out of dog shooting under both Fourth and Fourteenth Amendments); Kincheloe v. Caudle, No. A-09-CA-010 LY, 2009 WL 3381047 (W.D. Tex. Oct. 16, 2009) (same). In their Motion papers, however, Plaintiffs suggest that they are proceeding only under the Fourth Amendment, based on an (allegedly) unlawful seizure – indeed, the term "due process" appears nowhere in their Memorandum. Accordingly, the Court follows Plaintiffs' lead and analyzes Count I as arising under the Fourth Amendment alone.

The Court also notes that Count I is asserted against Johnson in both his individual and official capacities. But "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" of which the official is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). "There is no longer a need to bring official-capacity actions against local government officials, for under Monell [v. Department of Social Services of City of New York, 436 U.S. 658 (1978)], local government units can

be sued directly for damages and injunctive or declaratory relief." Id. at 167 n.14.  In this case, Plaintiffs have agreed to voluntarily dismiss all of their Monell claims.  (Mem. in Opp'n at 13.)  Accordingly, any claims against Johnson in his official capacity must be dismissed, as well.

In addition, sprinkled throughout Plaintiffs' brief are suggestions that they may bring a traditional Fourth Amendment excessive-force claim regarding Blu's shooting. They are wrong.  The Fourth Amendment protects *persons* from the excessive use of force by police officers.  U.S. Const. amend. IV ("The right of *the people* to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.") (emphasis added).  Dogs, however, are "considered *property* for Fourth Amendment purposes." Andrews v. City of W. Branch, Ia., 454 F.3d 914, 918 (8th Cir. 2006) (emphasis added).  Accordingly, Plaintiffs cannot bring an excessive-force claim on Blu's behalf.  See, e.g., Taylor v. City of Chi., No. 09 CV 7911, 2010 WL 4877797, at *4 (N.D. Ill. Nov. 23, 2010) (recognizing that plaintiffs could not assert excessive-force claim on behalf of dog shot by police officer).  Rather, the so-called excessive force bears only on whether Blu was unreasonably *seized* in violation of the Fourth Amendment.  See Andrews, 454 F.3d at 918.

Finally, in their brief Plaintiffs intimate that Johnson violated the Fourth Amendment by entering and searching their garage and backyard.  (Mem. in Opp'n at 11.)  Neither the Complaint nor the Amended Complaint, however, assert a claim for an unlawful *search*.  The Court, therefore, will not consider such a claim at this juncture. See, e.g., Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989)

("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, . . . simply by raising a point in a brief.") (internal citations omitted); Carpenter v. City of Charleston, No 1:10 CV 17, 2011 WL 2669308, at *2 n.3 (E.D. Mo. July 7, 2011) (declining to consider claim asserted for first time in plaintiff's response to summary-judgment motion).

As a result of the foregoing, the Court considers Count I as asserting a claim against Johnson, in his individual capacity, for an unlawful seizure under the Fourth Amendment. Johnson argues that he is entitled to qualified immunity on such a claim. For the reasons that follow, the Court agrees.[6]

**I. Qualified immunity**

In determining whether a government official is entitled to qualified immunity, the Court must conduct a two-part inquiry. First, it must assess whether the facts alleged, when viewed in the light most favorable to the plaintiff, show that the challenged conduct violated a constitutional right. If a violation could be established based on those facts, the Court must then determine whether the constitutional right at issue was clearly established on the date in question. E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court has discretion as to which of these two questions to answer first, Pearson v. Callahan, 555 U.S. 223, 235-36 (2009), and here it begins with the former: whether the facts, viewed in

---

[6] Johnson also argues that Plaintiffs had no property rights in Blu because the dog was unlicensed. In light of the Court's analysis below, it need not reach that issue.

the light most favorable to Plaintiffs, establish a violation of their Fourth Amendment rights.

The Fourth Amendment proscribes only "*unreasonable* searches and seizures." Andrews, 454 F.3d at 918 (emphasis added). A Fourth Amendment "seizure" occurs "when there is some meaningful interference with a person's possessory interests in [his] property." Id. It can hardly be doubted that by shooting and killing a dog, a police officer "meaningfully interferes" with its owner's possessory interests. See, e.g., id.; Kincheloe, 2009 WL 3381047, at *6 ("[E]very circuit that has considered the issue has held that the killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment."); Hatch v. Grosinger, Civ. No. 01-1906, 2003 WL 1610778, at *4 (D. Minn. Mar. 3, 2003) (Kyle, J.).

The issue, then, is under what circumstances such a seizure is unreasonable. The answer requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). Because the government "retains a strong interest in allowing law enforcement officers to protect themselves . . . from animal attacks," courts have recognized that "no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat." Dziekan v. Gaynor, 376 F. Supp. 2d 267, 271 (D. Conn. 2005); accord, e.g., Bailey v. Schmidt, 239 F. App'x 306, 308-09 (8th Cir. 2007) (*per curiam*) (killing of dogs not unreasonable where evidence showed they "either advanced on or acted aggressively toward the officers"); Williams v. Voss, Civ. No. 10-2092, 2011 WL 4340851, at *5 (D.

Minn. Sept. 15, 2011) (Montgomery, J.) ("The common denominator for all cases holding that officers may seize an aggressive dog, and those that hold that officers may not seize a non-threatening dog, is officer safety."); Hatch, 2003 WL 1610778, at *5.

Here, Plaintiffs argue that there exists a genuine issue as to whether Blu posed a threat to Johnson. They contend it was a docile dog, had never bitten anyone, and was pregnant and could not move rapidly on the day in question. All dogs, however, "contain a latent threat to human safety . . . and can be unpredictable both in their actions and in the signals they send." P.M. *ex rel.* Whitworth v. Bolinger, No. 2:10-CV-04208, 2011 WL 5838406, at *7 (W.D. Mo. Nov. 21, 2011). Indeed, while Blu may have approached Johnson "merely to greet and sniff [him] or to receive a friendly pat on the head," had he refrained from shooting the dog and been incorrect in his assessment of its intentions, he would have had to "defend himself from [Blu] by other means in close range attack, [and] the risk of serious injury or death to him . . . would have been considerable." Warboys v. Proulx, 303 F. Supp. 2d 111, 118 (D. Conn. 2004).

More importantly, it is undisputed that Blu, which by all accounts was a large dog, was at the very least "jogging" directly toward Johnson, and Jarell testified that it was ignoring commands to return to him. Plaintiffs contend that Blu was "not in attack mode," but the record is devoid of evidence to support that assertion. Johnson testified that the dog had its "mouth open, teeth glaring, and . . . looked extremely aggressive," which Jarell was unable to see from his vantage point behind the dog. Furthermore, Devette testified that Blu was "very protective," lending credence to Johnson's testimony that the dog was charging at him, particularly after having been seen by the dog walking

on Plaintiffs' property. Finally, Johnson testified that he had nowhere to go for "cover" in the alley. (Johnson Dep. at 30-31.) Under these facts, the Court concludes that Johnson reasonably perceived an imminent threat to his safety and, hence, acted reasonably in shooting Blu.[7]

Plaintiffs point out that Walker, who was "standing right by Johnson," did not draw his weapon or take any defensive measures when the dog approached, thereby suggesting Johnson acted unreasonably. (Mem. in Opp'n at 11.) Walker's exact location vis-à-vis Johnson is unclear from the record. (Compare Johnson Dep. at 26 (testifying that Walker was "right behind" him) with J. Evans Dep. at 19 (testifying that Walker was "at the squad car," which was "[a] little bit down the alley" from Johnson).) There is no dispute, however, that the dog was directly behind and charging toward *Johnson*, not Walker. Accordingly, their different reactions are not surprising. Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." Graham v. Connor, 490 U.S. 386, 395 (1989). While Johnson perhaps could have reacted differently (as Walker did), "the Fourth Amendment does not allow this type of 'Monday morning quarterback' approach because it only requires that the seizure fall within a *range* of objective reasonableness." Hatch, 2003 WL 1610778, at *5 (emphasis added) (quoting Schulz v. Long, 44 F.3d 643, 649 (8th Cir. 1995)). Even

---

[7] Although the reasonableness of an officer's conduct is measured *objectively* and not *subjectively*, Davis v. Scherer, 468 U.S. 183, 191 (1984), the Court notes that Johnson testified in his deposition that he believed the dog was attacking him and felt he "had to protect [him]self" and "had no choice" but to shoot. (Johnson Dep. at 35-36.)

if he misperceived the threat posed by Blu, police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004). In the Court's view, it was not *unreasonable* for Johnson to perceive a threat to his safety from a large, unleashed pit bull "jogging" up behind him with its teeth bared.

For these reasons, the Court concludes that Johnson is entitled to qualified immunity on Plaintiffs' Fourth Amendment claim.[8]

## II. The City

Plaintiffs next argue that the City's failure to adequately train Johnson how to deal with attacking dogs "was a direct cause of Blu's death" and, hence, violated their constitutional rights. (Mem. in Opp'n at 14.) Such a theory is not viable, however, in the absence of an underlying constitutional violation by Johnson. See, e.g., Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010) ("[W]e have consistently held that a municipality cannot be liable under § 1983 unless one of its employees is found liable."); Brockington

---

[8] The Court notes that the record contains a handwritten "statement" of Donald Poderzay, which is attached to the affidavit of Plaintiffs' counsel. According to this "statement," Poderzay was at Plaintiffs' home on the day in question and was told by Johnson that Blu "should not have been shot." The Court will not consider this "statement" for two reasons: (1) Plaintiffs have nowhere cited it in their brief, see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials."); Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 915 (8th Cir. 2007) ("A district court is not . . . obligated to wade through and search the entire record for some specific fact that might support th[at] party's claim.") (citation omitted), and (2) the "statement" is not notarized or signed under penalty of perjury (in fact, it is not signed at all) and hence is of no evidentiary value, see, e.g., Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) (unsworn statement inadmissible hearsay); Mason v. Clark, 920 F.2d 493, 495 (8th Cir. 1990) (same), and thus cannot be considered at summary judgment, see, e.g., Holden v. Hirner, 663 F.3d 336, 340 (8th Cir. 2011) ("[T]he nonmoving party must proffer *admissible evidence* demonstrating a genuine dispute as to a material fact.") (emphasis added).

v. City of Shorewood, Ark., 503 F.3d 667, 673 (8th Cir. 2007). Accordingly, Plaintiffs' failure-to-train claim also must be dismissed.[9]

### III. Counts III, V and VI: State-law Claims

For the reasons set forth above, both of Plaintiffs' constitutional claims (Counts I and II of the Amended Complaint) must be dismissed. In addition, Plaintiffs have agreed to voluntarily dismiss their negligent-hiring, negligent-supervision, and negligent-retention claims (Count IV).

As for the remaining claims in the Amended Complaint – intentional infliction of emotional distress (Count III), vicarious liability (Count V), and trespass and conversion (Count VI) – the Court declines to exercise supplemental jurisdiction. Jurisdiction in this action is predicated on the existence of federal questions, namely, the alleged constitutional violations by Defendants. Jurisdiction over the state-law claims exists only by virtue of 28 U.S.C. § 1367, which provides supplemental jurisdiction over state-law claims that form part of the same "case or controversy" over which the Court otherwise enjoys jurisdiction. But where, as here, all federal claims are eliminated prior to trial, the balance of factors to be considered in deciding whether to exercise supplemental jurisdiction over a pendent state-law claim typically militates against exercising such jurisdiction. E.g., Williams v. Hobbs, 658 F.3d 842, 853 (8th Cir. 2011); Johnson v. City

---

[9] In any event, failure-to-train liability may be found "only in 'limited circumstances,'" and "a pattern of constitutional violations is 'ordinarily necessary to establish municipal culpability and causation.'" Connick v. Thompson, 131 S. Ct. 1350, 1367 (2011) (citations omitted). Evidence of such a "pattern" is lacking here.

of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004). Accordingly, the remaining claims will be dismissed without prejudice.

## CONCLUSION

The Court is not unsympathetic to Plaintiffs, whose beloved pet was killed through no fault of their own. The evidence in the record, however, fails to establish a constitutional violation by Defendants.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 27) is **GRANTED IN PART** as follows:

1. The Motion is **GRANTED** as to (a) Plaintiffs' federal claims (Counts I and II of the Amended Complaint (Doc. No. 12)) and (b) Plaintiffs' claims for negligent hiring, negligent supervision, and negligent retention (Count IV), and those claims are **DISMISSED WITH PREJUDICE**; and

2. The remaining claims in the Amended Complaint (Counts III, V, and VI) are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date: January 17, 2012         s/Susan Richard Nelson
                               SUSAN RICHARD NELSON
                               United States District Judge